UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT BILHORN and ADEEL KHAN individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JAGUAR LAND ROVER NORTH AMERICA, LLC and JAGUAR LAND ROVER LIMITED,<br><br>Defendants. | Case No. 2:26-cv-08139-EP-JRA<br><br>Motion Date: November 16, 2026 |

**DEFENDANT JAGUAR LAND ROVER NORTH AMERICA, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS


**Page(s)**

TABLE OF AUTHORITIES ....................................**Error! Bookmark not defined.**

INTRODUCTION ........................................................................................1

FACTUAL BACKGROUND.............................................................................2

LEGAL STANDARD.....................................................................................6

ARGUMENT .............................................................................................7

I. THE CLRA, UCL, AND ICFA CLAIMS SHOULD BE DISMISSED ...............................................................................7

A. The CLRA Claim is Inadequately Pleaded (Count I).................7

1. Bilhorn Fails to State a CLRA Claim Based on Affirmative Representations...........................................8

2. Bilhorn Fails to State a CLRA Claim Based on Omissions ........................................................10

i. Bilhorn Has Not Met the Rule 9(b) Requirements.....................................10

ii. Bilhorn Fails to Plead a Duty to Disclose ............11

B. Bilhorn's UCL Claim is Inadequately Pleaded (Count II) .......21

C. Khan's ICFA Claim is Inadequately Pleaded (Count V)..........24

1. Khan Fails to State an ICFA Claim Based on Affirmative Misrepresentations.....................................26

2. Khan Fails to State an ICFA Claim Based on Omissions ........................................................27

II. THE FAC FAILS TO STATE ANY WARRANTY CLAIM ............29

A. Plaintiffs Fail to State a Claim for Breach of Express Warranty................................................................29

B. Bilhorn Fails to State a Claim for Breach of Implied Warranty....36

III. BILHORN'S CALIFORNIA STATUTORY CLAIMS ARE FACIALLY TIME-BARRED....38

CONCLUSION....40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Suzuki Motor Corp. v. Super. Ct.*,
44 Cal.Rptr.2d 526 (Cal. Ct. App. 1995)....................38

*Amato v. Subaru of Am., Inc.*,
No. 18-cv-16118, 2019 WL 6607148 (D.N.J. Dec. 5, 2019)....................33, 35

*Aryeh v. Canon Business Sols., Inc.*,
292 P.3d 871 (Cal. 2013)....................38

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................7, 11

*Beteiro, LLC v. Bet MGM, LLC*,
626 F. Supp. 3d 789 (D.N.J. 2022)....................33

*Bigler-Engler v. Breg, Inc.*,
213 Cal.Rptr.3d 82 (Cal. Ct. App. 2017)....................13

*Brown v. Madison Reed, Inc.*,
622 F. Supp. 3d 786 (N.D. Cal. 2022)....................38

*Callaghan v. BMW of N. Am., LLC*,
No. 13-cv-4794, 2014 WL 6629254 (N.D. Cal. Nov. 21, 2014)....................19

*Carson v. HP Inc.*,
750 F. Supp. 3d 376 (D. Del. 2024)....................8, 31

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
973 P.3d 527 (Cal. 1999)....................23

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008)....................24, 31

*Coba v. Ford Motor Co.*,
932 F.3d 114 (3d Cir. 2019)....................34

*Connick v. Suzuki Motor Co., Ltd.*,
675 N.E.2d 584 (Ill. 1996)....................25, 27, 35, 36

*Darne v. Ford Motor Co.*,
No. 13-cv-3594, 2015 WL 9259455 (N.D. Ill. Dec. 18, 2015)..............29, 30, 32

*De Bouse v. Bayer*,
922 N.E.2d 309 (Ill. 2009)....................25, 27

*FDIC v. Bathgate*,
27 F.3d 850 (3d Cir. 1994)....................7

*Ferris v. Ford Motor Co.*,
No. 18-cv-3216, 2019 WL 1100376 (N.D. Cal. Mar. 8, 2019)....................29, 38

*Finney v. Ford Motor Co.*,
No. 17-cv-6183, 2018 WL 2552266 (N.D. Cal. June 4, 2018)....................39

*Fleury v. Gen. Motors LLC*,
654 F. Supp. 3d 724 (N.D. Ill. 2023)....................27

*Fox v. Ethicon Endo-Surgery, Inc.*,
110 P.3d 914 (Cal. 2005)....................39

*Frederico v. Home Depot*,
507 F.3d 188 (3d Cir. 2007)....................7

*Goldstein v. Gen. Motors LLC*,
445 F. Supp. 3d 1000 (S.D. Cal. 2020)....................31

*Gonzalez v. Nissan N. Am., Inc.*,
No. 2:24-cv-4101, 2024 WL 5369367 (C.D. Cal. Oct. 16, 2024)....................13

*Gray v. Toyota Motor Sales, U.S.A., Inc.*,
554 F. App'x 608 (9th Cir. 2014)....................11

*Grodzitsky v. Am. Honda Motor Co.*,
No. 2:12-cv-1142, 2013 WL 690822 (C.D. Cal. Feb. 19, 2013)....................14, 15

*Gutierrez v. Carmax Auto Superstores Cal.*,
248 Cal.Rptr.3d 61 (Cal. Ct. App. 2018)....................21

*Harrison v. Gen. Motors, LLC*,
No. 21-cv-12927, 2023 WL 348962 (E.D. Mich. Jan. 19, 2023).......................32

*Herremans v. BMW of N. Am. LLC*,
No. 14-cv-2363, 2014 WL 5017843 (C.D. Cal. Oct. 3, 2014).....................10, 19

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) .............................................. 15, 17, 18, 22, 23, 24

*Isip v. Mercedes-Benz USA, LLC*,
65 Cal.Rptr.3d 695 (Cal. Ct. App. 2007)..........................................................37

*LiMandri v. Judkins*,
60 Cal.Rptr.2d 539 (Cal. Ct. App. 1997)........................................12, 13, 14, 18

*Lingsch v. Savage*,
29 Cal.Rptr. 201 (Cal. Ct. App. 1963)..............................................................14

*Marchante v. Sony Corp. of Am., Inc.*,
801 F. Supp. 2d 1013 (S.D. Cal. 2011).........................................................17, 18

*McCabe v. Ford Motor Co.*,
774 F. Supp. 3d 349 (D. Mass. 2025)..................................................10, 27, 28

*McIntyre v. Am. Honda Motor Co.*,
739 F. Supp. 3d 776 (C.D. Cal. 2024) ..............................................................33

*Moore v. Am. Honda Motor Co.*,
740 F. Supp. 3d 814 (N.D. Cal. 2024).........................................................28, 37

*Mosqueda v. Am. Honda Motor Co.*,
443 F. Supp. 3d 1115 (C.D. Cal. 2020) ...................................................7, 14, 22

*In re NAHC, Inc. Sec. Litig.*,
306 F.3d 1314 (3d Cir. 2002) ...........................................................................33

*O'Connor v. Ford Motor Co.*,
477 F. Supp. 3d 705 (N.D. Ill. 2020).............................................25, 26, 28, 36

*Phillips v. Cnty. of Allegheny*,
515 F.3d 224 (3d Cir. 2008) ...............................................................................7

*Punian v. Gillette Co.*,
No. 14-cv-5028, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) .................... 8, 10

*Rains v. Jaguar Land Rover N. Am., LLC*,
No. 22-cv-4370, 2023 WL 6234411 (D.N.J. Sept. 26, 2023) (Padin, J.) ........................................................ 6, 19, 20, 21, 22, 30, 33, 34

*Rattagan v. Uber Techs., Inc.*,
553 P.3d 1213 (Cal. 2024) ........................................................................ 13

*Sangenito v. BMW of N. Am., LLC*,
No. 2:25-cv-17858, 2026 WL 3015524 (D.N.J. Oct. 7, 2026) ......... 19, 21, 31, 38

*Santiago v. Tesla, Inc.*,
757 F. Supp. 3d 831 (N.D. Ill. 2024) ............................................. 26, 27, 28

*Schiesser v. Ford Motor Co.*,
No. 16-cv-730, 2017 WL 1283499 (N.D. Ill. Apr. 6, 2017) ............................ 31

*In re Seagate Tech. LLC Litig.*,
233 F. Supp. 3d 776 (N.D. Cal. 2017) ........................................................ 23

*Silvio v. Ford Motor Co.*,
135 Cal. Rptr. 2d 846 (Cal. Ct. App. 2003) .................................................. 29

*Skeen v. BMW of N. Am., LLC*,
No. 2:13-cv-1531, 2014 WL 283628 (D.N.J. Jan. 24, 2014) ............................ 31

*Sloan v. Gen. Motors LLC*,
No. 16-cv-7244, 2017 WL 3283998 (N.D. Cal. Aug. 1, 2017) ......................... 35

*Smith v. Ford Motor Co.*,
749 F. Supp. 2d 980 (N.D. Cal. 2010) ................................................... 11, 31

*Snyder v. TAMKO Bldg. Prods., Inc.*,
No. 1:15-cv-1892, 2019 WL 4747950 (E.D. Cal. Sept. 30, 2019) ..................... 32

*Sonner v. Premium Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ...................................................................... 21

*Sonneveldt v. Mazda Motor of Am., Inc.*,
No. 8:19-cv-1298, 2021 WL 62502 (C.D. Cal. Jan. 4, 2021) ............................ 29

*Stewart v. Electrolux Home Prods., Inc.*,
304 F. Supp. 3d 894 (E.D. Cal. 2018) ....................................................10, 11, 37

*In re Subaru Battery Drain Prods. Liab. Litig.*,
No. 20-cv-03095, 2021 WL 1207791 (D.N.J. Mar. 31, 2021).....................26, 36

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ..........................................................................8

*Tietsworth Sears, Roebuck & Co.*, No. 09-cv-288, 2009 WL 1363548
(N.D. Cal. May 14, 2009) ..............................................................................37

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Pracs. & Prods. Liab. Litig.*,
No. 10-cv-2172, 2011 WL 13160303 (C.D. Cal. Jan. 20, 2011) .......................39

*Troup v. Toyota Motor Corp.*,
545 F. App'x 668 (9th Cir. 2013) ..................................................................33

*Velez v. RM Acquisition, LLC*,
670 F. Supp. 3d 620 (N.D. Ill. 2023)..............................................................32

*Voelker v. Porsche Cars N. Am., Inc.*,
353 F.3d 516 (7th Cir. 2003) ........................................................................35

*Williams v. Yamaha Motor Co. Ltd.*,
851 F.3d 1015 (9th Cir. 2017) ..................................................................15, 17

*Wilson v. Hewlett-Packard Co.*,
668 F.3d 1136 (9th Cir. 2012) ...................................................14, 15, 18, 19, 22

*Wong v. Am. Honda Motor Co.*,
No. 22-56113, 2024 WL 612939 (9th Cir. Feb. 14, 2024)................................20

*Woo v. Am. Honda Motor Co.*,
462 F. Supp. 3d 1009 (N.D. Cal. 2020)...........................................................35

**Rules**

Fed. R. Civ. P. 9(b) ....................................................... 1, 7, 8, 10, 11, 25, 26, 27, 39

Fed. R. Civ. P. 12(b)(6)..........................................................................1, 6

Fed. R. Evid. 201(b)..........................................................................33

**Statutes**

15 U.S.C. §§ 1231–1233 ........................................................................ 28

15 U.S.C. § 1232 ........................................................................ 9

44 U.S.C. § 1507 ........................................................................ 6

Cal. Bus. & Prof. Code § 17200 ........................................................................ 22

Cal. Bus. & Prof. Code § 17208 ........................................................................ 38

Cal. Civ. Code § 1668 ........................................................................ 22, 23, 24

Cal. Civ. Code § 1709 ........................................................................ 22, 23, 24

Cal. Civ. Code § 1710 ........................................................................ 22, 23, 24

Cal. Civ. Code § 1750 et seq ........................................................................ 22

Cal. Civ. Code § 1783 ........................................................................ 38

Cal. Civ. Code §1791.1(c) ........................................................................ 36

Cal. Civ. Code § 2313 ........................................................................ 22, 23

**Other Authorities**

21 C.F.R. § 108 ........................................................................ 5

21 C.F.R. § 108, Table 1-B ........................................................................ 5

49 C.F. R. § 571.108 ........................................................................ 16

74 Fed. Reg. 30993–996 (June 29, 2009) ........................................................................ 5, 6

https://www.carexpert.com.au/car-news/do-daytime-running-lights-improve-road-safety (last visited Oct. 13, 2026) ........................................................................ 16

## INTRODUCTION

Plaintiffs' First Amended Class Action Complaint ("FAC") (ECF 22) should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b). All claims asserted by Plaintiffs Robert Bilhorn and Adeel Khan are premised on the allegation that the LED daytime running lights ("DRL") in 2020–2023 Land Rover Defender vehicles (the "Class Vehicles") are defective because they can fail prematurely. Each Plaintiff has a 2022 Land Rover Defender. After the New Vehicle Limited Warranty ("NVLW") for their vehicles had expired, they each allegedly experienced a failure of a DRL. DRLs are not required safety features, and failure of a DRL does not affect operation of the headlamp itself. Rather than paying for a repair, Bilhorn replaced the DRL himself. Khan declined the repair altogether. Bilhorn claims the other DRL in his vehicle later failed, but both continue to drive the vehicles without incident. Plaintiffs claim that Jaguar Land Rover North America, LLC[1] ("JLRNA") violated various consumer fraud statutes and breached warranties in selling vehicles with a component that could fail at some point, and seek to represent California and Illinois subclasses.

All claims should be dismissed. *First*, Plaintiffs fail to state a claim under the California Unfair Competition Law ("UCL"), the California Consumers Legal

[1] Defendant Jaguar Land Rover Limited ("JLR Limited") has not been served and has not appeared. Accordingly, this Motion is brought only on behalf of JLRNA.

Remedies Act ("CLRA"), and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). *Second*, the express warranty claims fail because neither Plaintiff alleges he presented the vehicle for repair during the express warranty period, and the alleged defect as pled is one of design that is not covered by the terms of the NVLW, which is limited to defects in workmanship or materials. *Third*, Khan's breach of express warranty claim further fails because he did not provide pre-suit notice. *Fourth*, Bilhorn's implied warranty of merchantability claim should be dismissed both because his vehicle is not unmerchantable merely because a DRL has failed and because the NVLW limits the implied warranty period to the duration of the express warranty, which had expired. *Finally*, Bilhorn's California statutory claims are facially time-barred. For these reasons, the Court should grant JLRNA's Motion to Dismiss and dismiss the FAC in full.

## FACTUAL BACKGROUND[2]

***Plaintiffs' Vehicles.*** In October 2021, Bilhorn, a California citizen, bought a new 2022 Land Rover Defender from Land Rover Carlsbad in Carlsbad, California. (FAC ¶¶ 19, 39.) In September 2025, Khan, an Illinois citizen, bought a certified pre-owned 2022 Land Rover Defender with 53,301 miles on the odometer from Jaguar Land Rover Hinsdale in Hinsdale, Illinois. (*Id.* ¶¶ 20, 53.) Both Plaintiffs

[2] For purposes of this Motion to Dismiss only, all well-pleaded factual allegations in the FAC are accepted as true.

allege that before their respective purchases, they reviewed the "window sticker" and "advertisements for the vehicle," test drove the vehicle, and "spoke with JLR sales representatives concerning the vehicle's features." (*Id.* ¶¶ 40, 54.) Both identically assert that "[s]afety, reliability, and premium build quality were important factors in" their purchasing decisions, as was the "existence of functioning LED DRLs . . . because DRLs are a critical safety feature designed to increase vehicle visibility and reduce collisions." (*Id.* ¶¶ 41, 43, 55, 57.)

Both Plaintiffs allege that one of the DRLs in their vehicles "failed suddenly and without warning." (*Id.* ¶¶ 46, 60.) For Khan, that occurred two months after his purchase, in November 2025, when the driver-side DRL failed with approximately 55,000 miles on the odometer. (*Id.* ¶ 60.) When Khan presented his vehicle to Land Rover Hinsdale, he was told that because his 50,000-mile/4-year NVLW had expired, he would have to pay "approximately $3,000" to replace the entire headlight assembly. (*Id.* ¶ 61.) Khan refused the repair due to the cost. (*Id.*) Bilhorn alleges that the passenger-side DRL on his vehicle failed in February 2026, with approximately 47,000 miles on the odometer. (*Id.* ¶ 46.) His vehicle was also out of warranty, and he was quoted approximately $3,000 to replace the headlight assembly. (*Id.* ¶ 47.) Bilhorn, an engineer, purchased a replacement OEM LED module and made the repair himself, which "restored functionality" to the DRL. (*Id.* ¶ 48.) He alleges that on or around September 21, 2026, the driver-side DRL "failed

suddenly and without warning" and that he "intends" to take the vehicle to the dealer. (*Id*. ¶ 49.) Both Plaintiffs claim they have sustained "an ascertainable loss" because the value of their vehicles is diminished due to the presence of the alleged defect. (*Id.* ¶¶ 51, 63.) Bilhorn further alleges he is entitled to the time and money he incurred in replacing his DRL. (*Id.* ¶ 51.)

***Alleged Defect.*** "Every Class Vehicle comes equipped with identical 'halo'-style LED DRLs." (*Id.* ¶ 74.) The LED DRLs "are intended and expected to function for years and tens of thousands of driving hours." (*Id.* ¶ 2.) Yet, Plaintiffs variously claim that the LED DRLs in the putative Class Vehicles "fail shortly after purchase, typically within the term of JLR's [NVLW] or shortly thereafter," (*id*. ¶ 2) or "uniformly fail within two to five years of purchase." (*Id.* ¶ 88.) Plaintiffs allege this is because the LED DRLs are "unable to withstand the thermal stress to which they are exposed during ordinary and expected vehicle operation." (*Id.* ¶ 91.) Specifically, they allege that the "LED control modules" are defective because they are "incapable of sufficient thermal conductivity." (*Id.* ¶ 91.) They allege that using a solder mask instead of "metal backing on the module" "impedes heat transfer to the heat sink, causing the module and the LED DRL light matrix to burn out due to insufficient heat dissipation." (*Id.* ¶ 93.) They also contend the "failure to apply a thermal compound between the heatsink and the DRL control module" contributes to the problem. (*Id.* ¶ 95.) They further allege that the replacement parts have the same

defect and because "the DRLs are integrated into the headlight assembly," the entire assembly must be replaced even if just one part therein has failed. (*Id.* ¶¶ 97–99.)

***Federal Regulatory Background.*** Plaintiffs contend that the DRLs in their vehicles are "federally recognized safety components" designed to reduce collisions by making vehicles more visible during daylight and low-visibility conditions. (*Id.* ¶ 76.) But the federal government has never recognized DRLs as a "critical safety feature," as Plaintiffs allege. (*Id.* ¶ 5.) In fact, the federal government does not require DRLs on vehicles and never has. Under Federal Motor Vehicle Safety Standard 108, 21 C.F.R. § 108, DRLs are "permitted but not required." If a manufacturer chooses to so equip a vehicle, the requirements of S7.10 must be met. The regulation specifically requires that DRLs must be "automatically deactivated when the headlamp control is in any 'on' position, and, if optically combined with a turn signal lamp "must be automatically deactivated . . . when the turn signal lamp or hazard warning lamp is activated." 21 C.F.R. § 108, Table 1-B.

In 2009, NHTSA denied a petition by General Motors to mandate DRLs. *See* 74 Fed. Reg. 30993–996 (June 29, 2009). After repeated studies, including one in 2008 that NHTSA characterized as "more robust" than prior inquiries into the effectiveness of DRLs, the agency concluded that: "evidence linking DRLs to lower incidents of crashes is not persuasive"; it "was unable to find solid evidence of overall safety benefits associated with DRLs installed on passenger vehicles"; and it

"has been unable to document overall safety benefits due to DRL installation which could serve as a basis for mandating them." *Id*. at 30994, 30996. NHTSA concluded that it would "remain[] neutral" with respect to a policy on inclusion of DRLs and allowed manufacturers to make their own decisions on whether to install them. *Id*.[3] It has not wavered from that position in the ensuing years.

***Claims & Putative Classes.*** Bilhorn asserts claims under the CLRA (Count I), UCL (Count II), and breach of express warranty and the implied warranty of merchantability under the Song-Beverly Consumer Warranty Act ("SBWA") (Counts III & IV), on behalf of himself and a California class. Khan asserts a claim under the ICFA (Count V), on his own behalf and on behalf of an Illinois class. Both Plaintiffs also assert a common-law breach of express warranty claim (Count VI), individually and for certain state sub-classes.

## LEGAL STANDARD

"When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pleaded facts as true, construes the complaint in the plaintiff's favor, and determines 'whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Rains v. Jaguar Land Rover N. Am., LLC*, No. 22-cv-4370, 2023 WL 6234411, at *2 (D.N.J. Sept. 26, 2023) (Padin,

[3] JLRNA requests the Court to take judicial notice of this Denial of Petition for Rulemaking by NHTSA published in the Federal Register, which is judicially noticeable by statute. 44 U.S.C. § 1507.

J.) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint must still "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[P]laintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must be dismissed if the plaintiffs cannot "nudge[] their claims across the line from conceivable to plausible." *Id.* at 570. Further, fraud-based claims require heightened pleading under Rule 9(b). *E.g.*, *FDIC v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994). "Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

## ARGUMENT

## I. THE CLRA, UCL, AND ICFA CLAIMS SHOULD BE DISMISSED

### A. The CLRA Claim is Inadequately Pleaded (Count I)

Because the CLRA count is based on JLRNA's alleged fraud, Rule 9(b) applies. *See, e.g.*, *Mosqueda v. Am. Honda Motor Co.*, 443 F. Supp. 3d 1115, 1123

(C.D. Cal. 2020); *Punian v. Gillette Co.*, No. 14-cv-5028, 2016 WL 1029607, at *4–5 (N.D. Cal. Mar. 15, 2016). Whether based on alleged affirmative representations or omissions, Bilhorn fails to state a claim.

### 1. Bilhorn Fails to State a CLRA Claim Based on Affirmative Representations

Bilhorn alleges that JLRNA violated various sections of the CLRA through affirmative representations. (FAC ¶ 170.) He alleges he viewed the "window sticker" and unidentified "advertisements for the vehicle," as well as "spoke with JLR sales representatives concerning the vehicle's features," and test-drove it, and that he "purchased the vehicle in part because JLR marketed the Defender as a premium luxury SUV equipped with advanced safety features, including LED lighting systems designed to improve visibility and roadway safety." (*Id.* ¶¶ 40–41.) To meet the Rule 9(b) standard, Bilhorn must allege the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

The FAC plainly fails to meet this standard, which is only made more evident by the fact that both Plaintiffs make identical allegations. *Compare* FAC ¶¶ 40–41 *with* ¶¶ 54–55; *see also Carson v. HP Inc.*, 750 F. Supp. 3d 376, 392 (D. Del. 2024) (noting that the complaint's allegations about what multiple plaintiffs saw and relied upon were "word-for-word identical (which is, in and of itself, a sign that Rule 9(b) may not be satisfied)"). The reference to unidentified "advertisements" lacks the

requisite specificity. Indeed, there is nothing in the FAC tying these generic categories of material to JLRNA at all. As for the "window sticker"—presumably the federally-required Monroney label (*see* 15 U.S.C. § 1232)—even if it identified DRLs as equipment on the vehicle, that is a true statement, not a misrepresentation or an affirmative representation about their durability.[4]

Finally, both plaintiffs allege they "spoke with JRL sales representatives concerning the vehicle's features." (FAC ¶¶ 40, 54.) This too is inadequate for several reasons. First, there is no allegation that the "features" discussed included the DRLs, nor is any specific representation relevant to the allegations in this case identified. Second, though Plaintiffs call these individuals "JLR sales representatives" they are referring to dealership sales personnel who are not alleged to have been employed by or under the control of JLRNA. Although the FAC adds a paragraph alleging that Jaguar Land Rover dealerships are "JLR's agents" for purposes of selling the vehicles, delivering warranty booklets, window stickers, and "other point-of-sale materials" (*Id.* ¶ 35), this conclusory allegation is likewise insufficient to allege that JLRNA made representations regarding the DRLs to plaintiffs through an agent. Indeed, many courts have rejected the contention that an

[4] Plaintiffs include in the FAC a sample window sticker for a 2020 Land Rover Defender obtained online, which lists as "Standard Equipment" under "Exterior" "Daytime Running Auto-Leveling Auto High-Beam Headlamps w/Delay-Off." (FAC ¶ 82.)

independently owned automobile dealership is an agent of the vehicles' distributor or manufacturer. *McCabe v. Ford Motor Co.*, 774 F. Supp. 3d 349, 389 (D. Mass. 2025) ("Dealerships are not automatically considered agents of automobile manufacturers . . . .") (citing cases)).[5]

**2. Bilhorn Fails to State a CLRA Claim Based on Omissions**

**i. Bilhorn Has Not Met the Rule 9(b) Requirements**

Bilhorn relies on the very same sources to support his CLRA claim on an omission-based theory. Although the Rule 9(b) standard is "somewhat relaxed" when a fraud-based claim involves alleged omissions, "a plaintiff alleging fraudulent omission or concealment must still plead the claim with particularity." *Herremans v. BMW of N. Am. LLC*, No. 14-cv-2363, 2014 WL 5017843, at *9 (C.D. Cal. Oct. 3, 2014). To do so, "a plaintiff must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information." *Stewart v. Electrolux Home Prods., Inc.*, 304 F. Supp. 3d 894, 907 (E.D. Cal. 2018). And under California law, "a manufacturer's duty to

[5] Since Bilhorn fails to identify any specific representations, the Court need not address the crux of the CLRA inquiry, which is whether the alleged representation is "deceptive or misleading" because it "is likely to deceive a reasonable consumer." *Punian*, 2016 WL 1029607, at *5 (quote omitted).

consumers is limited to its warranty, unless a safety issue is present or there has been some affirmative misrepresentation." *Gray v. Toyota Motor Sales, U.S.A., Inc.*, 554 F. App'x 608, 609 (9th Cir. 2014).

Applying these principles, Bilhorn again comes up short. Nowhere does he allege what he supposedly should have been told or how it should have been revealed. The recitation of what he reviewed prior to his purchase is entirely vague and does not include any discernible connection to JLRNA. (FAC ¶¶ 33, 39.) As for the Monroney sticker, the statute does not require that it contain information about potential defects or component failures that might or might not occur in the future, nor would any consumer expect such a disclosure to be made there. And Bilhorn also fails to describe the content of the disclosure he claims should have been given or where he would have seen it, so he fails to meet Rule 9(b)'s specificity requirement for this reason as well. *E.g.*, *Twombly*, 550 U.S. at 555, 570; *Stewart*, 304 F. Supp. 3d at 907.

**ii. Bilhorn Fails to Plead a Duty to Disclose**

California courts hold that a manufacturer cannot be liable for failing "to disclose a defect that manifests itself after the expiration of the warranty period unless such omission (1) is contrary to a representation actually made by the defendant or (2) pertains to a fact the defendant was obligated to disclose." *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010) (quote omitted). Here,

the DRL failures in Bilhorn's vehicle manifested after expiration of the warranty, and the FAC does not plead any contrary representations or a duty to disclose.

There are four circumstances under California law in which a duty to disclose may arise: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *LiMandri v. Judkins*, 60 Cal.Rptr.2d 539, 543 (Cal. Ct. App. 1997). Bilhorn does not allege a fiduciary relationship between himself and JLRNA (nor could he), nor does he identify any alleged partial representations. Accordingly, only the second and third *LiMandri* prongs are potentially relevant to the duty inquiry.

At the outset, however, Bilhorn has not pleaded the existence of the requisite relationship between himself and JLRNA to establish *any* duty to disclose. This is because "where material facts are known to one party and not to the other, failure to disclose them is not actionable fraud unless there is *some relationship* between the parties which gives rise to a duty to disclose such known facts." *LiMandri*, 60 Cal.Rptr.2d at 543. And "[a]s a matter of common sense, such a relationship can only come into being as a result of some sort of *transaction* between the parties." *Id.* California courts have predicated such a relationship on a transaction emanating from direct dealing between the plaintiff and the defendant—and not "between the

defendant and the public at large—before such a duty could arise. *See Bigler-Engler v. Breg, Inc.*, 213 Cal.Rptr.3d 82, 113 (Cal. Ct. App. 2017). Indeed, in *Bigler-Engler*, the appellate court reversed a verdict for fraudulent concealment against the manufacturer of a medical device because the manufacturer and the plaintiff (who was allegedly injured using the device) did not have the requisite direct relationship when the patient had not obtained the device directly from the manufacturer but rather had purchased it from a medical group that sold and leased the devices. *Id.* at 115–16. The California Supreme Court recently affirmed this principle, when it quoted *Bigler-Engler* and stated that the transaction in question "must necessarily arise from *direct dealings* between the plaintiff and the defendant." *Rattagan v. Uber Techs., Inc.*, 553 P.3d 1213, 1238 (Cal. 2024) (emphasis added).

Here, no direct transaction is alleged between JLRNA and Bilhorn. (*See* FAC ¶ 39.) And conclusory allegations of an agency relationship between JLRNA and the dealership from which Bilhorn purchased his vehicle (*id.* ¶ 35) cannot establish a duty to disclose under California law. *See Gonzalez v. Nissan N. Am., Inc.*, No. 2:24-cv-4101, 2024 WL 5369367, at *5–6 (C.D. Cal. Oct. 16, 2024) (finding no such relationship when the plaintiff bought a new vehicle from an authorized dealership).

***No Active Concealment.*** The third *LiMandri* prong is easily dispensed with, because Bilhorn has not pleaded that JLRNA actively concealed the alleged DRL issue. A sufficiently pled active concealment theory requires plausible allegations of

"affirmative acts on the part of the defendants in hiding, concealing, or covering up the matters complained of." *Lingsch v. Savage*, 29 Cal.Rptr. 201, 204 (Cal. Ct. App. 1963); *see also Grodzitsky v. Am. Honda Motor Co.*, No. 2:12-cv-1142, 2013 WL 690822, at *6 n.7 (C.D. Cal. Feb. 19, 2013) (explaining that "under the 'active concealment' theory, courts have also required a plaintiff to assert factual allegations of such concealment"). The conclusory allegations in the FAC fall well short of this requirement, as Bilhorn entirely fails to allege how JLRNA acted to conceal the alleged defect. Instead, he simply conclusorily states that JLRNA did so. (FAC ¶¶ 12, 152, 154, 170, 173(d), 174–75.) Such allegations are no more than "bare legal conclusions" that are insufficient to support an active concealment theory. *Mosqueda*, 443 F. Supp. 3d at 1130–31.

***No Material Fact.*** Both the second (and third) *LiMandri* prong require that the omitted fact be material, which is also lacking here. *See LiMandri*, 60 Cal.Rptr.2d at 543. The standard for materiality in the Ninth Circuit has evolved over time. Some courts have viewed the question of materiality as intertwined with that of safety and declined to find a fact material unless it raised a legitimate safety concern. *See, e.g.*, *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012); *Grodzitsky*, 2013 WL 690822, at *5. More recently, the Ninth Circuit has acknowledged that allegations of safety concerns are not required to establish a duty to disclose if the plaintiff sufficiently alleges that the defect is a physical problem

that affects the central functioning of the product. *See Hodsdon v. Mars, Inc.*, 891 F.3d 857, 860 (9th Cir. 2018). Policy considerations support this more limited interpretation of the duty to disclose, as under a contrary rule, the failure "of a product to last forever would become a defect, a manufacturer would no longer be able to issue limited warranties, and product defect litigation would become as widespread as manufacturing itself." *Wilson*, 668 F.3d at 1141–42 (quote omitted). But the FAC does not sufficiently allege a material fact under either of these theories.

Even applying the "safety defect" test, "[i]n order to state a claim under the CLRA for failing to disclose a safety defect," Bilhorn "must allege 1) the existence of a design defect; 2) the existence of an unreasonable safety hazard; 3) a causal connection between the alleged defect and the alleged safety hazard; and 4) that Defendant knew of the defect at the time a sale was made." *Grodzitsky*, 2013 WL 690822, at *6. This he fails to do, because the FAC fails adequately to allege the existence of "an *unreasonable* safety hazard," as opposed to a mere invocation of safety-related concerns. *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1029 (9th Cir. 2017) (emphasis added).

Bilhorn alleges that DRL failures "pose a significant safety risk" to everyone on the road because of "reduced vehicle conspicuity during dawn, dusk, inclement weather, and other low-visibility driving conditions," including in "forests or mountainous areas." (FAC ¶¶ 3, 78; *also id.* ¶¶ 4, 77.) He further alleges that a "2019

study concluded that DRLs reduce the risk of accidents by 8.8%" and that certain JLRNA dealerships characterize DRLs as a "safety issue" and acknowledge their visibility benefits. (*Id.* ¶¶ 79–80.) And he alleges that DRLs are "federally recognized safety components." (*Id.* ¶ 76.)

These allegations are insufficient. As discussed above, NHTSA has never mandated DLRs (*see* 49 C.F. R. §571.108) and remains unconvinced of their safety benefits. Each Plaintiff pleads that one of the two DRLs in his vehicle failed, but the other remained visible and illuminated. The failure of a DRL is not alleged to affect the operation of the vehicle, including the use of the headlights for night-time driving or, indeed, during the day should a driver choose to leave them on during daylight or low-visibility conditions. Nor is there any allegation that Bilhorn or anyone else actually experienced a collision in a 2020-2023 Defender vehicle because one of the DRLs was not illuminated.

Even if the Australian study cited in the FAC (¶ 79 n.12) supported the effectiveness of DLRs "under Australian environmental conditions," *see* https://www.carexpert.com.au/car-news/do-daytime-running-lights-improve-road-safety (last visited Oct. 13, 2026), that does not rise to the level, even at the pleading stage, of showing an unreasonable safety hazard. As for the dealership websites, these are independent entities whose website content is not alleged to be controlled by JLRNA and from whom Plaintiffs did not purchase their vehicles. One is in

Atlanta, and the other in British Columbia, not the United States. (FAC ¶ 80, nn.13 & 14.)

All that is left, then, are Bilhorn's unsupported assertions that the allegedly defective DRLs pose a safety hazard. As courts recognize, however, "merely stating that a safety risk existed is insufficient," and claims rightly fail where a plaintiff does not "provide factual allegations showing any instance of physical injury or safety concerns posed by the defect." *Marchante v. Sony Corp. of Am., Inc.*, 801 F. Supp. 2d 1013, 1018 (S.D. Cal. 2011) (quote omitted); *also Williams*, 851 F.3d at 1028 ("[A] party's allegations of an unreasonable safety hazard must describe more than merely conjectural and hypothetical injuries."). Indeed, as the Ninth Circuit concluded in *Williams*, 851 F.3d at 1028–29, the lack of "any allegations indicating that any customer, much less any plaintiff, experienced such a fire—a notable omission if the alleged unreasonable safety hazard arises in *all* Yamaha outboard motors sooner or later"—meant that the plaintiffs had not adequately pled an unreasonable safety hazard. So too, here.

Applying the test in *Hodsdon*, 891 F.3d at 860, Bilhorn does not even come close to adequately pleading a CLRA claim, which requires a physical defect that affects the central functioning of the product. His vehicle continues to operate normally in all respects even if a DRL is not illuminated. As the FAC alleges, "DRL failures may not be immediately apparent to drivers because DRLs primarily

function to increase visibility of the vehicle to others rather than illuminate the roadway itself," and "[a]s a result, drivers may unknowingly operate Class Vehicles for extended periods with failed DRLs." (FAC ¶ 81.) And Bilhorn (and Khan) do not allege any inability to drive their vehicles with a nonworking DRL. Bilhorn thus concedes that his vehicle and the putative Class Vehicles can perform their central function, *i.e.*, providing safe and reliable transportation, even if a DRL is not working (for whatever reason).

In sum, the FAC fails adequately to plead that a potential failure of a DRL is a material fact that JLRNA had a duty to disclose, so the CLRA claim should be dismissed. *See, e.g.*, *Marchante*, 801 F. Supp. 2d at 1018–19 (dismissing the plaintiff's CLRA claim because "whatever defects" there may have been "in Sony's televisions [were] not defects that Sony was obligated to disclose").

***No Exclusive Pre-Sale Knowledge.*** Bilhorn's allegations of exclusive pre-sale knowledge—the other requirement of the second *LiMandri* prong—also fall short. Under the CLRA, a plaintiff "must sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss." *Wilson*, 668 F.3d at 1145. And the defendant's knowledge must be exclusive, not merely "superior." *See Hodsdon*, 891 F.3d at 864 n.5 (remarking, albeit without deciding, that the defendant's argument that "the test is '*exclusive*' knowledge . . . appears to [be] the better reading of California law" (emphasis added)). The FAC identifies as

sources of such alleged knowledge: "pre-release evaluation and testing," repair data, replacement part sales data, consumer complaints, data from dealers and "other internal sources." (FAC ¶ 11.) None is sufficient.

First, the Court can disregard all the purported consumer complaints because with the exception of a sole complaint dated September 10, 2021 (*id.* ¶ 132), they all post-date Bilhorn's purchase. *See Rains*, 2023 WL 6234411, at *6 (declining to consider "online consumer complaints . . . as providing pre-sale knowledge" when the complaints post-dated the vehicle sale); *Callaghan v. BMW of N. Am., LLC*, No. 13-cv-4794, 2014 WL 6629254, at *4 (N.D. Cal. Nov. 21, 2014) (finding that one NHTSA complaint was not sufficient to show knowledge).

Second, the allegations of knowledge gained through "pre-sale testing" (FAC ¶¶ 102–05) are too generic and conclusory, and they also fail to distinguish between JLRNA, the distributor of the vehicles, and its parent JLR Limited, which is the manufacturer that presumably conducted any such testing. (*Id*. ¶ 27); *see Sangenito v. BMW of N. Am., LLC*, No. 2:25-cv-17858, 2026 WL 3015524, at *9 (D.N.J. Oct. 7, 2026). The allegations regarding a "$37 million investment in new testing facilities" (FAC ¶ 105) and testing vehicles in "punishing on and off-road environments," without any further elaboration do not allege *what* durability testing was done, by which defendant, and *how* it would have revealed this specific defect. *See, e.g.*, *Wilson*, 668 F.3d at 1147; *Herremans*, 2014 WL 5017843, at *16–17

(finding allegations of pre-sale knowledge insufficiently pled when the plaintiff did not "describe the internal testing"). Plaintiffs' allegations are also different from those the Court considered in *Rains*, where the complaint alleged that durability testing of an important and "vital" component, the "vehicle's windshield," "could have indicated" the presence of the alleged defect there, *i.e.*, spontaneous cracking. *Rains*, 2023 WL 6234411, at *6. Here, there is no logical link between vehicle durability testing and a functioning DRL. The allegations in this case are more in line with the cases finding insufficient allegations of testing. *E.g.*, *Wong v. Am. Honda Motor Co.*, No. 22-56113, 2024 WL 612939, at *2 (9th Cir. Feb. 14, 2024).

Third, exclusive pre-sale knowledge cannot be established through replacement part data. (FAC ¶¶ 119–23.) At no point does the FAC indicate when supposed "higher-than-expected number of replacement headlight assembly" orders occurred nor allege that it was before October 2021. To the contrary, the FAC alleges that the DRL issue takes "two to five years" to manifest (*id.* ¶ 86) and points to a 2023 post from a dealer about back orders that post-dates Bilhorn's purchase, (*id.* ¶ 121 n.31).

Fourth, and finally, Bilhorn's reliance on a Special Service Message ("SSM") dated July 19, 2021, is misplaced. (*Id.* ¶¶ 113–14.) The SSM indicates that JLR Limited was looking into reports of 2020 and 2021 model-year Defender vehicles whose DRLs were allegedly not working or working only intermittently. But there

is nothing in the SSM to relate this to the 2022 vehicle Bilhorn bought. More importantly, the SSM itself says that the cause was "unknown at this time." (*Id.* ¶ 114.) At most, then, the SSM indicates that JLR Limited was investigating reports of a symptom, *i.e.*, DRLs that did not work or only worked intermittently in some vehicles (not including Bilhorn's), but it does not sufficiently show that JLRNA had exclusive, pre-sale knowledge of the specific defect with the DRLs that the FAC alleges. *See Sangenito*, 2026 WL 3015524, at *11 (finding service bulletin insufficient to demonstrate knowledge).

**B. Bilhorn's UCL Claim is Inadequately Pleaded (Count II)**

Only equitable remedies are available under the UCL. *See Gutierrez v. Carmax Auto Superstores Cal.*, 248 Cal.Rptr.3d 61, 89–90 (Cal. Ct. App. 2018). The Ninth Circuit has held that before a plaintiff can obtain equitable relief under the UCL (and CLRA, for that matter), the plaintiff "must establish that she lacks an adequate remedy at law." *Sonner v. Premium Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). The FAC does not adequately allege that Bilhorn lacks an adequate remedy at law, nor does it allege "why legal relief is inadequate" or why the injunctive relief sought under Count II (FAC ¶ 179) "is necessary." *Rains*, 2023 WL 6234411, at *8. To the extent Bilhorn contends injunctive relief is necessary because JLRNA "replaces the headlight assemblies with equally defective replacement parts," (FAC ¶ 144), this is insufficient to plead why a remedy at law is inadequate

given that, as explained above, the alleged DRL defect is not material. Moreover, the allegation is facially contradicted by the assertion in the FAC that JLR redesigned the headlight assembly "due to knowledge of the defect." (*Id.* ¶ 118.) In these circumstances, as this Court has previously held, the UCL claim should be dismissed. *See Rains*, 2023 WL 6234411, at *7–8.

Moreover, the FAC fails to state a UCL claim under any of the three prongs: fraudulent, unlawful, or unfair. *See* Cal. Bus. & Prof. Code § 17200.

For the fraud prong, Bilhorn's allegations are based on the same allegedly fraudulent conduct as his CLRA claim. But as explained above, JLRNA did not have a duty to disclose the alleged defect to Bilhorn. *See* Section I.A.2.ii, *supra*. And a "failure to disclose a fact one has no affirmative duty to disclose is not likely to deceive anyone within the meaning of the UCL." *Hodsdon*, 891 F.3d at 865 (quote omitted). Thus, the UCL claim fails to state a claim for the same reasons as does the CLRA claim. *See, e.g.*, *Mosqueda*, 443 F. Supp. 3d at 1130.

The UCL's unlawful prong "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Wilson*, 668 F.3d at 1145. Bilhorn alleges that JLRNA's conduct is "unlawful" under the UCL because it violates "California Civil Code sections 1668, 1709, 1710, and 1750 et seq., and California Commercial Code section 2313." (FAC ¶ 183.) California Civil Code §§ 1750 et seq. is the CLRA, but as explained above,

the FAC fails to state a claim for violation of the CLRA. California Commercial Code § 2313 is breach of express warranty under California's version of the UCC, but, as explained below, Bilhorn has failed to state a claim under that theory of liability as well. California Civil Code § 1668 identifies contracts that "are against the policy of the law" because the contract exempts someone from responsibility from their own fraudulent acts. No such contract has been identified or alleged here. California Civil Code § 1709 states that "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers," and § 1710 defines "deceit" within the meaning of § 1709. Nothing in the FAC alleges conduct sufficient to establish a "violation" under either of these sections. Therefore, because Bilhorn has not stated a claim for the violation of any other law, he cannot state a UCL claim under the unlawful prong. *See Hodsdon*, 891 F.3d at 865.

For the unfair prong, California courts have applied one of two tests, and Bilhorn's claim fails under both. The first test is whether the practice "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 797 (N.D. Cal. 2017). The second test provides that the challenged conduct must be "tethered to some legislatively declared policy," *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.3d 527, 565 (Cal. 1999), and

requires "a close nexus between the challenged act and the legislative policy," *Hodsdon*, 891 F.3d at 866.

Because JLRNA did not have a duty to disclose that a DRL might fail at some point in the future, the "failure to disclose information it had no duty to disclose in the first place is not substantially injurious, immoral, or unethical." *Hodsdon*, 891 F.3d at 867. Moreover, the "failure to disclose a defect that might, or might not, shorten the effective life span of an automobile part that functions precisely as warranted throughout the term of its express warranty," as Bilhorn's did here, "cannot be characterized as causing a substantial injury to consumers, and accordingly does not constitute an unfair practice under the UCL." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026–27 (9th Cir. 2008) (quote omitted). And to the extent that the Court construes Bilhorn's invocation of California Civil Code §§ 1668, 1709, and 1710 vis-à-vis the unlawful prong (FAC ¶ 183) as enough to identify specific legislative policies for the unfair prong, that also fails. Again, the underlying predicate is missing here, because he has not adequately alleged that JLRNA fraudulently procured a contract (Cal. Civ. Code § 1668) or willfully deceived him (Cal. Civ. Code §§ 1709, 1710). For these reasons, Bilhorn has not adequately alleged any "unfair" conduct by JLRNA to support a UCL claim.

### C. Khan's ICFA Claim is Inadequately Pleaded (Count V)

Khan's claims fare no better. For starters, Khan allegedly purchased a certified

pre-owned 2022 Defender vehicle from a JLRNA dealer in 2025 after expiration of the NVLW. (FAC ¶¶ 53, 61.) JLRNA is not alleged to have had any interaction with Khan whatsoever in connection with this used-vehicle transaction. As discussed above, the dealership-as-agent contentions added to the Amended Complaint (FAC ¶ 35) are insufficient to allege an agency relationship between the dealership and JLRNA even as to new cars, much less as to a used vehicle.

An ICFA claim requires the plaintiff to plead "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the deception." *De Bouse v. Bayer*, 922 N.E.2d 309, 313 (Ill. 2009). The basic principle underpinning an ICFA claim "is that to maintain an action under the Act, the plaintiff must actually be deceived by a statement or omission that is made by the defendant" because if the plaintiff "has neither seen nor heard any such statement, then she cannot have relied on that statement and, consequently, cannot prove proximate cause." *Id.* at 316. "Where an ICFA claim rests on allegations of deceptive conduct, Rule 9(b) applies and the plaintiff must plead with particularity the circumstances constituting fraud." *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 718 (N.D. Ill. 2020); *also Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 593 (Ill. 1996)

(an ICFA claim "alleging a violation of consumer fraud must be pled with the same particularity and specificity as that required under common law fraud").

While the ICFA also proscribes "unfair" conduct, the only "unfair" conduct alleged here is conclusory (FAC ¶¶ 218–19), and to the extent Khan relies on the same allegedly deceptive conduct, that "does not change an ICFA claim that is entirely grounded in fraud to an unfairness claim" and allow him to avoid the Rule 9(b) standard. *O'Connor*, 477 F. Supp. 3d at 720 (quote omitted); *also Santiago v. Tesla, Inc.*, 757 F. Supp. 3d 831, 844 (N.D. Ill. 2024); *In re Subaru Battery Drain Prods. Liab. Litig.*, No. 20-cv-03095, 2021 WL 1207791, at *26 (D.N.J. Mar. 31, 2021) (dismissing unfairness claim under ICFA where allegations were entirely grounded in fraud).

Applying these standards, Khan's claim fails whether based on affirmative misrepresentations or omissions.

**1. Khan Fails to State an ICFA Claim Based on Affirmative Misrepresentations**

Khan's allegations regarding the things he viewed and relied on are identical to Bilhorn's. (FAC ¶¶ 54–55.) His ICFA claim, to the extent it is based on affirmative misrepresentations, thus fails for the same reasons, *i.e.*, he does not include any specificity, let alone enough to meet the Rule 9(b) standard. *See, e.g.*, *O'Connor*, 477 F. Supp. 3d at 719 ("Without a plausible link tying any particular statement by

Defendant to Plaintiff's purchase of the Vehicle, Plaintiff also fails to allege proximate causation, as required to state a claim for violation of the ICFA.").

### 2. Khan Fails to State an ICFA Claim Based on Omissions

The Illinois Supreme Court has made it clear that even when an ICFA claim is based on alleged omission or concealment, "the plaintiff must actually be deceived by a statement or omission," which means that a plaintiff "cannot maintain an action under the Illinois Consumer Fraud Act when the plaintiff does not receive, directly or indirectly, communication or advertising from the defendant." *De Bouse*, 922 N.E.2d at 316. In the context of an omission, this requires the plaintiff to "connect[] the dots between the purported omission and a particular communication by [the defendant] which he relied on." *Fleury v. Gen. Motors LLC*, 654 F. Supp. 3d 724, 732 (N.D. Ill. 2023); *also Santiago*, 757 F. Supp. 3d at 843.

Here, Khan does not identify any specific advertising or statements from purported dealer sales representatives, let alone tie those to JLRNA. (FAC ¶¶ 54–55.) Plaintiff's allegations that the dealership from which he bought his pre-owned vehicle was acting as an agent of JLRNA are manifestly inadequate to bridge this gap. *See, e.g.*, *Connick*, 675 N.E.2d at 592; *McCabe*, 774 F. Supp. 3d at 389. And where an agency relationship is integral to a fraud allegation, it should be evaluated under the heightened Rule 9(b) standard. *McCabe*, 774 F. Supp. 3d at 388–89. Plaintiff's allegation of agency here is purely conclusory (FAC ¶ 35) and should be

dismissed. *See McCabe*, 774 F. Supp. 3d at 399 (dismissing ICFA claim where plaintiff did not allege any exposure "to any representations from Ford (as opposed to dealership salespeople)").

As for the "window sticker," (FAC ¶¶ 33, 54), a Monroney label only applies to the sale of *new* vehicles, 15 U.S.C. §§ 1231–1233, but Khan bought his vehicle *used*, (FAC ¶ 53). If, in fact, the dealer showed him the original Monroney sticker (and he does not so allege or attach the actual sticker), the allegation would still be insufficient for the reasons discussed in connection with Bilhorn, *supra*. In either event, Khan's purchase was years after the creation of the Monroney sticker that accompanied the vehicle when first sold as new. *See Santiago*, 757 F. Supp. 3d at 841 ("When bringing a[n ICFA] claim based on an omission of a material fact, a plaintiff must allege that the fact omitted or concealed was known to the defendant at the time of the concealment."). These generic allegations are insufficient to state an omissions claim under the ICFA. *See, e.g.*, *O'Connor*, 477 F. Supp. 3d at 720 ("Here, Plaintiff does not identify any particular direct statements from Defendant that contain material omissions. For that reason, Plaintiff also fails to state an ICFA claim based on a 'material omission' theory."); *Moore v. Am. Honda Motor Co.*, 740 F. Supp. 3d 814, 828–29 (N.D. Cal. 2024) (finding that the plaintiffs' allegations were "inadequate to state an ICFA claim" when they "fail[ed] to identify specific communications that omitted material information" (collecting cases)).

## II. THE FAC FAILS TO STATE ANY WARRANTY CLAIM

### A. Plaintiffs Fail to State a Claim for Breach of Express Warranty

Plaintiffs' breach of express warranty claims (Counts III and VI) fail for several reasons. First, plaintiffs fail to allege that they presented their vehicles to dealers for repair within the NVLW period. Second, the FAC alleges only a design defect, but the NVLW is applicable only to defects in workmanship or materials. Finally, Khan's claim fails for lack of pre-suit notice nor does he state a claim for breach of express warranty applicable to his certified pre-owned vehicle.

***Lack of Presentment.*** To state a claim for breach of a motor vehicle express warranty, a plaintiff must present the vehicle to an authorized dealer for repairs within the terms of the warranty. *See, e.g.*, *Sonneveldt v. Mazda Motor of Am., Inc.*, No. 8:19-cv-1298, 2021 WL 62502, at *12 (C.D. Cal. Jan. 4, 2021) ("A plaintiff claiming a breach of express warranty is required to give the defendant a chance to perform warranty service before the defendant can be held liable for breach of warranty."); *Silvio v. Ford Motor Co.*, 135 Cal. Rptr. 2d 846, 847–48 (Cal. Ct. App. 2003) (noting that a claim for breach of express warranty under the SBWA must be based on an issue that was either subject to more than one repair attempt or complained of on more than one occasion, *i.e.*, presentment); *Darne v. Ford Motor Co.*, No. 13-cv-3594, 2015 WL 9259455, at *4–5 (N.D. Ill. Dec. 18, 2015) (explaining that "a plausible claim for breach of an express limited warranty arises

only if the manufacturer failed to remedy a problem appearing within the warranty period").

The FAC on its face requires dismissal of Bilhorn's and Khan's express warranty claims because both allege that they were denied free repairs precisely because their NVLW had expired by the time they presented them for repairs.[6] (FAC ¶¶ 47, 61.) Although Khan alleges his vehicle was certified pre-owned (*id*. ¶ 53), and that JLRNA provides a limited warranty to pre-owned vehicles (*id*. ¶ 139), he does not allege that this warranty provided coverage for a DRL failure and that it was improperly denied to him.

To try to avoid the time and mileage requirements of the NVLW, Plaintiffs allege that because JLRNA had "knowledge of the inherent defects," the warranty fails of its essential purpose and any time and mileage limitations are unconscionable. (FAC ¶¶ 10, 148–49.) Plaintiffs also allege that the limitations are procedurally unconscionable because they did not have "equal bargaining power" and "had no other options for purchasing warranty coverage other than directly from" JLRNA. (*Id.* ¶ 148.) These arguments are unavailing.

The "reason for a warranty" is "to repair any problem that such defects might cause during the warranty period," *Darne*, 2015 WL 9259455, at *5, and "to

---

[6] These allegations are distinguishable from those in *Rains*. 2023 WL 6234411, at *12. There, the issue was whether windshield cracks were due to "outside" forces and thus not covered by the NVLW though it was still in effect.

contractually mark the point in time during the useful life of a product when the risk of paying for repairs shifts from the manufacturer to the consumer," *Smith*, 749 F. Supp. 2d at 988. Indeed, "[e]very manufactured item is defective at the time of sale in the sense that it will not last forever," but "the warranty is [not] implicated when the item fails after the warranty period expires"; rather, the "product has performed as expressly warranted." *Clemens*, 534 F.3d at 1023.

Courts also routinely find that these time limits (as well as more restrictive limitations) are reasonable. *See, e.g.*, *Sangenito*, 2026 WL 3015524, at *7 ("time and mileage limits on their face are not unconscionable"); *Goldstein v. Gen. Motors LLC*, 445 F. Supp. 3d 1000, 1014–15 (S.D. Cal. 2020) (finding that 4-year/50,000-mile warranty was not unconscionable); *Schiesser v. Ford Motor Co.*, No. 16-cv-730, 2017 WL 1283499, at *3 (N.D. Ill. Apr. 6, 2017) (finding that 3-year / 36,000-mile warranty was not unconscionable). Moreover, "it is not sufficient merely to allege that a manufacturer knew a part would fail after the expiration of a warranty period." *Skeen v. BMW of N. Am., LLC*, No. 2:13-cv-1531, 2014 WL 283628, at *14 (D.N.J. Jan. 24, 2014) (citing cases). Rather, courts find durational limits on a warranty unconscionable, if at all, only when there are allegations of such knowledge coupled with allegations that the defendant both intentionally manipulated the warranty and intentionally misled the plaintiffs "to buy time until after they were no longer obligated by the warranty to make the necessary repairs." *Id.* at *15; *see also Carson*,

750 F. Supp. 3d at 404. No such allegations are present here. And a "limited warranty fails of its essential purpose only if, after multiple attempts, the warrantor fails to repair the defects in a reasonable timeframe." *Snyder v. TAMKO Bldg. Prods., Inc.*, No. 1:15-cv-1892, 2019 WL 4747950, at *4 (E.D. Cal. Sept. 30, 2019); *also Velez v. RM Acquisition, LLC*, 670 F. Supp. 3d 620, 635–40 (N.D. Ill. 2023).

Here, both Plaintiffs allege that their LED DRLs first needed replacing after the NVLW ended, and there are no well-pled allegations that JLRNA intentionally deceived them to run out the warranty clock. Equally unavailing are allegations of unequal bargaining power or a lack of warranty options. "Bargaining power comes primarily from having viable alternatives in the marketplace," which, with respect to the "car industry," gives consumers "substantial bargaining power" because "the car industry is one of the most competitive markets that exists," thus providing consumers with "a meaningful choice between a range of manufacturers and models." *Harrison v. Gen. Motors, LLC*, No. 21-cv-12927, 2023 WL 348962, at *10 (E.D. Mich. Jan. 19, 2023). Plaintiffs could have purchased other vehicles or sought additional warranty coverage. *See Darne*, 2015 WL 9259455, at *8 (agreeing with Ford that although "it unilaterally drafted the terms of the warranty, . . . all purchasers had the opportunity to purchase additional warranty coverage for repairs beyond the expiration of the original warranty, and [] this opportunity provided consumers with a 'meaningful choice'").

For these reasons, the breach of express warranty claims (Counts III & VI) should be dismissed.

***The NVLW Does Not Apply to Design Defects.*** In any event, Plaintiffs' theory of alleged defect with the DRLs would not be covered by the NVLW. This is because the NVLW covers only defects in materials and workmanship, not design defects. Specifically, "JLR warrants that during the warranty period, if a Land Rover vehicle is properly operated and maintained, repairs required to correct defects in factory-supplied materials or factory workmanship will be performed without charge upon presentment for service at a Land Rover retailer/authorized repairer."[7] Under both California and Illinois law, "an express written warranty that covers 'materials and workmanship,' also referred to as manufacturing defects, does not include design defects." *McIntyre v. Am. Honda Motor Co.*, 739 F. Supp. 3d 776, 793 (C.D. Cal. 2024); *also Troup v. Toyota Motor Corp.*, 545 F. App'x 668, 668 (9th Cir. 2013); *Rains*, 2023 WL 6234411, at *12; *Amato v. Subaru of Am., Inc.*, No. 18-cv-16118, 2019 WL 6607148, at *5 (D.N.J. Dec. 5, 2019).

---

[7] JLRNA attaches a true and correct copy of the relevant portion of the Passport to Service, which is the NVLW for the 2022 Defender, as Exhibit 1 to the Declaration of Tiffany Alexander filed herewith ("Alexander Decl."). Alexander Decl. Ex. 1 at p. 399. Because these warranty documents are "integral to" and "explicitly relied on" in the FAC, JLRNA asks the Court to take judicial notice of their contents. *See* Fed. R. Evid. 201(b); *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002). The Court "need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Beteiro, LLC v. Bet MGM, LLC*, 626 F. Supp. 3d 789, 795 (D.N.J. 2022) (citation omitted).

Here, Plaintiffs' theory of defect is clearly one of design defect only. *See supra* pp. 4–5. Indeed, despite sprinkling the terms "manufacturing defect," "assembly", and "workmanship and materials" throughout the FAC in conclusory fashion, (*e.g.*, FAC ¶¶ 91, 96), their specific allegations of defect belie this effort. Plaintiffs allege that JLRNA's design included "defective LED control modules" that are "incapable of sufficient thermal conductivity." (*Id*. ¶ 93.) Specifically, they allege that the failure to use a metal backing on the module, but instead having a "solder mask between the DRL module and the heat sink," impedes heat transfer and causes the module and the LED DRL light matrix to burn out due to insufficient heat dissipation." (*Id*. ¶ 94.) This problem is allegedly "amplified" by the lack of a "thermal compound between the heatsink and the DRL control module." (*Id*. ¶ 95.) As pleaded, these are design choices that affect all the DRL assemblies, not some deviation from the intended manufacturing processes or a quality problem with the materials used that affect only Plaintiffs' vehicles or any other subset. *See Coba v. Ford Motor Co.*, 932 F.3d 114, 123–24 (3d Cir. 2019) (defining a design defect as "a flaw inherent in the product's intended operation and construction" and finding a warranty covering materials or workmanship inapplicable to design defects).[8] Thus, there can be no breach of warranty because the express warranty does not extend to

[8] This is again distinguishable from *Rains*, 2023 WL 6234411, at *12–13, where the Court "refrain[ed] from determining which type of defect the FAC plead[ed]" because the plaintiffs alleged sufficient facts "to assert both" kinds of alleged defect.

design defects such as alleged in this complaint. *See, e.g.*, *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 526–27 (7th Cir. 2003) (affirming dismissal of express warranty claim when only a design defect was pled); *Woo v. Am. Honda Motor Co.*, 462 F. Supp. 3d 1009, 1016–17 (N.D. Cal. 2020) (granting motion to dismiss when alleged defect was one of design and only allegations regarding "material and/or workmanship" was "conclusory"); *Sloan v. Gen. Motors LLC*, No. 16-cv-7244, 2017 WL 3283998, at *8–9 (N.D. Cal. Aug. 1, 2017) (granting motion to dismiss and collecting cases); *Amato*, 2019 WL 6607148, at *4–6 (dismissing express warranty claim because the plaintiffs "allege[d] a flaw in the overall intended construction (a design decision)").

***Lack of Notice.*** Finally, Khan's express warranty claim fails for lack of pre-suit notice, which is required by the Illinois UCC. *Connick*, 675 N.E.2d at 589. "A notification of breach of warranty is sufficient if it lets the seller know that the particular transaction is still troublesome and must be watched." *Id.* (quote omitted). Neither of the two exceptions to the direct notice requirement is applicable here. For the first exception, which concerns the defendant's actual knowledge, the Supreme Court of Illinois has held that "even if a manufacturer is aware of problems with a particular product line, the notice requirement of section 2-607 is satisfied only where the manufacturer is somehow apprised of the trouble with the particular

product purchased by the particular buyer."[9] *Id.* at 590. The second exception, which deems notice sufficient upon the filing of a complaint alleging breach of warranty, applies only to "a consumer plaintiff who suffers a personal injury." *Id.* Unlike Khan, Bilhorn did give pre-suit notice of his own claims under the California CLRA (FAC ¶¶ 176, 195), but that is insufficient to put JLRNA on notice that Khan, an Illinois plaintiff, had his own claim under Illinois law. *See In re Subaru Battery Drain Prods. Liab. Litig.*, 2021 WL 1207791, at *15 (pre-suit notice by purchasers in other states are insufficient under Illinois law, which requires notice as to "particular end users"). Since no amendment can cure this failure, Khan's express warranty claim should be dismissed with prejudice. *See Connick*, 675 N.E.2d at 591; *O'Connor*, 477 F. Supp. 3d at 714–15 (dismissing breach of express warranty claim).

**B. Bilhorn Fails to State a Claim for Breach of Implied Warranty.**

Bilhorn's claim for breach of implied warranty under the Song-Beverly Act (Count IV) should be dismissed for at least two reasons.

First, Bilhorn's implied warranty claim is foreclosed by the expiration of the NVLW. Under California Civil Code §1791.1(c), the "duration of the implied warranty of merchantability . . . shall be coextensive in duration with an express warranty" provided the duration of the express warranty is reasonable. *See also*

---

[9] For this reason, Bilhorn's alleged pre-suit notice cannot satisfy Khan's requirement under Illinois law, because that notice only concerned Bilhorn's vehicle, not Khan's.

*Tietsworth Sears, Roebuck & Co.*, No. 09-cv-288, 2009 WL 1363548, at *3 (N.D. Cal. May 14, 2009). And the NVLW itself provides that any implied warranty is limited in duration to the term of the NVLW, as California law permits. *See Moore*, 740 F. Supp. 3d at 824; Ex. 1 to Alexander Decl. at p. 399. Because Bilhorn's DRL failure arose after expiration of the NVLW, his implied warranty claim should be dismissed.

Even if the claim were timely, it would nonetheless fail because the FAC does not sufficiently plead that Bilhorn's vehicle is unmerchantable. Under any formulation, the "core test of merchantability is fitness for the ordinary purpose for which such goods are used." *Isip v. Mercedes-Benz USA, LLC*, 65 Cal.Rptr.3d 695, 700 (Cal. Ct. App. 2007). In the vehicle context, courts have explained that "as long as a car can provide safe, reliable transportation, it is generally considered merchantable even if certain features . . . do not function properly." *Stewart*, 304 F. Supp. 3d at 913. Here again, the FAC itself undermines Bilhorn, as it expressly alleges that "drivers may unknowingly operate Class Vehicles for extended periods with failed DRLs." (FAC ¶ 81.) Bilhorn operated his vehicle for nearly 50,000 miles without any issues with a DRL. The fact that after many years of operation and after expiration of the NVLW a DRL failed to operate, which was imperceptible to the operator and did not affect operation of the headlights or any other aspect of the vehicle's operation, does not render the vehicle unmerchantable. *See, e.g.*,

*Sangenito*, 2026 WL 301524, at *8 (dismissing implied warranty claims where both plaintiffs drove their cars for three to five years before the alleged defect manifested); *Am. Suzuki Motor Corp. v. Super. Ct.*, 44 Cal.Rptr.2d 526, 529–31 (Cal. Ct. App. 1995).

## III. BILHORN'S CALIFORNIA STATUTORY CLAIMS ARE FACIALLY TIME-BARRED

Finally, Bilhorn's claims under the CLRA, the UCL, and for breach of implied warranty under the Song-Beverly Act (Counts I, II, and IV) are facially time-barred. He alleges that his vehicle had a latent defect when originally purchased that JLRNA failed to disclose and concealed, giving rise to his claims. (*E.g.*, FAC ¶¶ 11–12.)

Under California law, the statutes of limitation for the CLRA (3 years), UCL (4 years), and SBWA implied warranty (4 years) claims all run from the date of Bilhorn's purchase. *See* Cal. Civ. Code § 1783 (CLRA); Cal. Bus. & Prof. Code § 17208 (UCL); *Ferris v. Ford Motor Co.*, No. 18-cv-3216, 2019 WL 1100376, at *2 (N.D. Cal. Mar. 8, 2019) (SBWA). Bilhorn alleges he bought his vehicle in October 2021. (FAC ¶ 39.) Because the complaint in this case was filed on July 2, 2026, Counts I through IV of the FAC are facially time-barred. *See Brown v. Madison Reed, Inc.*, 622 F. Supp. 3d 786, 799–800 (N.D. Cal. 2022); *Ferris*, 2019 WL 1100376, at *2; *Aryeh v. Canon Business Sols., Inc.*, 292 P.3d 871, 878 (Cal. 2013).

The FAC's generic invocation of various tolling doctrines, including the discovery rule and fraudulent concealment tolling, is to no avail. (FAC ¶¶ 152–57.) It is Bilhorn's burden to sufficiently plead the applicability of these doctrines. *See, e.g.*, *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 920–21 (Cal. 2005); *Finney v. Ford Motor Co.*, No. 17-cv-6183, 2018 WL 2552266, at *3 (N.D. Cal. June 4, 2018). For the discovery rule, doing so requires sufficiently specific allegations about the circumstances surrounding the discovery of the claim *and* why he could not have discovered it earlier despite reasonable diligence. *See, e.g.*, *Fox*, 110 P.3d at 920–21. "[M]ere conclusory assertions," however, "are insufficient." *Finney*, 2018 WL 2552266, at *3. For fraudulent concealment, Bilhorn must plausibly allege that JLRNA fraudulently and actively prevented him from filing a timely action, *i.e.*, mere silence is not enough. *See, e.g.*, *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Pracs. & Prods. Liab. Litig.*, No. 10-cv-2172, 2011 WL 13160303, at *6 (C.D. Cal. Jan. 20, 2011). And Rule 9(b) applies. *See In re Toyota Hybrid Brake*, 2011 WL 13160303, at *6; *Finney*, 2018 WL 2552266, at *3.

Here, however, the FAC merely contends, in conclusory fashion, that Bilhorn could not discover the defect until after he experienced a DRL failure in 2026. (FAC ¶¶ 156.) But at no point does Bilhorn allege "*why*, in the exercise of reasonable diligence, [he] could not have discovered the defect earlier." *Finney*, 2018 WL 2552266, at *4 (emphasis added). Indeed, the FAC itself undermines this theory, as

it alleges that online complaints about the issue were publicly available as early as 2020. (*Id*. ¶¶ 130–34.) The FAC also alleges that JLRNA or the dealerships "routinely" "denied the problem existed" (*id.* ¶ 153), which makes no sense in the context of a non-functioning DRL, nor does it comport with Bilhorn's (or Khan's) own specifically alleged experiences at their dealers (*id.* ¶¶ 47, 61). As such, these allegations are plainly inadequate to invoke any applicable tolling doctrine and rescue Bilhorn's facially time-barred claims, which should be dismissed.

## CONCLUSION

While a malfunctioning DRL may affect the "iconic" "'mean' or 'tough' look the DRLs provide" (FAC ¶ 75), it is not a safety hazard, much less an unreasonable one. For these and other reasons discussed above, the failure of a DRL after expiration of the NVLW period cannot support any of Plaintiffs' claims. The Court should grant JLRNA's motion to dismiss.

Dated: October 23, 2026

Respectfully submitted,

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

*By: /s/ Tiffany M. Alexander*
Tiffany M. Alexander
NJ Bar No. 000692002
1000 Westlakes Drive, Suite 275
Berwyn, PA 19312
Tel.: 610-943-5351
tiffany.alexander@nelsonmullins.com

Terri S. Reiskin (admitted *pro hac vice*)
901 15th Street, N.W. Suite 1200
Washington, DC 20001
Tel.: 202-689-2814
terri.reiskin@nelsonmullins.com

Jason Hodge (admitted *pro hac vice*)
1021 East Cary Street, Suite 2120
Richmond, VA 23219
Tel.: 804-533-3891
jason.hodge@nelsonmullins.com

*Attorneys for Defendant Jaguar Land Rover North America, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of October, 2026, the foregoing Notice of Motion, Memorandum in Support, and Proposed Order were filed via ECF and thereby served on all counsel of record.

*/s/ Tiffany M. Alexander*